SHOOP v. SYCAMORE PRESERVE WORKS CORPORATION.
Civ. A. No. 48C1171.

United States District Court
N. D. Illinois, E. D.
May 18, 1949.

846

Edward J. Lesak, of Chicago, Ill., for plaintiff.

Castle & Lawler, Sycamore, Ill., and Walter S. Underwood and Wendell J. Brown of MacLeish, Spray, Price and Underwood, Chicago, Ill., for defendant.

IGOE, District Judge.

This cause having been tried before the Court without a jury upon the pleadings, and the Court having heard the testimony of witnesses and examined the documentary evidence produced by the respective parties, makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact.

1. The defendant corporation was duly served with summons.

2. The defendant is and at all relevant times has been an Illinois corporation with its place of business located in Sycamore, Illinois, where it has a canning plant. At all times it has been engaged in the business of canning or packing perishable and seasonal fresh vegetables, such as peas and corn, and is within the classification of an exempt industry which has been found by the Administrator of the Wage and Hour Act, 29 U.S.C.A. § 201 et seq., to be of a seasonal character. The order of the Administrator of the Wage and Hour Act which is applicable to the canning of vegetables was issued pursuant to Sec. 7(b) (3) of the Act under date of July 25, 1940, after application had been made by that industry. The business of canning fresh vegetables in which the defendant has been engaged in addition to being seasonal in nature as described in the order by the Administrator with reference to Sec. 7(b) (3) of the Wage and Hour Act is one of the seasonal businesses which is expressly declared to be seasonal under Sec. 7(c) of the Act. No claim is made in this case for violation of the minimum wage requirements, and the only issue is with respect to claim for overtime.

3. The business of the defendant is divided into five departments with a manager in charge of each branch or department. Part of the company's business consists in the growing of vegetables such as peas and corn on its own or rented farms in the environs of its plant at Sycamore

and curing the growing season many people are employed by the defendant in its farm department, which involves the seeding, plowing, cultivating, cutting, harvesting, threshing, husking, etc. A farm manager is in immediate charge of that work.

Also during the canning season the plant gets vegetables for canning in its plant by previously arranged contracts with the farmers in the community who contract for the raising of specific acreage on their farms of specific vegetables. The plant in turn agrees to furnish seed, fertilizer, and in actual practice also furnishes help during the busy season. Many people are employed in that department during the seasonal operation, and a field manager is in charge of that work.

Also there is a warehouse department in which the completed product is stored and from which orders are filled. A few people are employed in the warehouse and there is a warehouse manager.

The factory proper, in which the cooking, filling and sealing of cans is done is in charge of a factory manager.

Lastly there is an office department in which the administrative work of the company is done. During the busy season there are five or six people who do the office work, which is in charge of an office manager. This work involves the payroll, records production records, sales records, audit records, issuance of checks, banking, and all the work which would be incidental to the operation of such a business.

4. Each of the department managers reports only to the President of the company, who coordinates the various departments, and he relies upon each of the department managers to operate his separate department, and the separate manager of each department exercises whatever discretion is necessary or required for running his department.

5. The job of office manager became vacant, and on November 8, 1946, a want ad was inserted in the Chicago Tribune, which read:

"Office manager in small manufacturing company located in city within 75 miles of Chicago. Have charge general books. Excellent opportunity for ambitious young man. Starting salary $250.00 per month. * * *"

Among others the plaintiff responded to this ad, and was interviewed by the auditing company of the defendant which audits the books of the company about three times a year, and upon whom the President relied to select and recommend a person who would be competent to have charge of the office work connected with the defendant's business.

6. Plaintiff in his written application dated November 10, 1946, stated that he was a college graduate and had majored in accounting and business administration. He also said that he had been employed in charge of an office in the Chicago loop and had had eight years of accounting experience, and was familiar with all of its phases. He also said that his last job had been that of assistant comptroller where he had charge of the accounting department, including accounts payable, accounts receivable, payrolls, revenue audit, etc.

7. Shortly thereafter the plaintiff was employed to do the work of office manager of the defendant's office at a starting salary of $250.00 per month. He commenced work on December 15, 1946, and during the period of his employment, which continued until January 30, 1948, he was in complete charge of the office and was given full responsibility and discretion in connection with the business operations of the defendant insofar as its books were concerned. The President of the company, to whom he reported, was necessarily out of the office a great deal of the time, and the President had to have someone who would have responsibility and be in charge of the various separate units of the business.

8. The plaintiff regularly and directly assisted the President by taking full charge of, having responsibility for, and exercising the discretion incident to the operation of the office department of the company. He performed his work under only general supervision, and did responsible non-manual office work directly related to the general

848

business operations of the company, and had the specialized required training, experience and knowledge to do that work, which required the exercise of, discretion and independent judgment, both in the handling of the people in his department and in the doing of the accounting work involved in the operation of the business of the defendant company.

9. The plaintiff's primary duty consisted of the management of the office department of the company, which was a customarily recognized department wherein he regularly and customarily directed the work of the other employees engaged therein.

10. The plaintiff met the requirements of Sec. 541.2 in that he was compensated for his services on a salary basis of not less than $200.00 per month, and the work which he performed was that of a specially qualified accountant in charge of the office of the defendant.

11. During the period that the plaintiff was in the employ of the defendant the plaintiff had charge of the Wage and Hour records and he did not classify himself in any other capacity than that of office manager. In fact, he kept his own hours, did not punch a clock, and at no time made any demand upon the defendant for any additional time and one-half under the Fair Labor Standards Act, and never at any time classified or represented himself as a person employed in any capacity which would make him come under the Act. Various witnesses have testified that they worked under him and were on his office staff. In fact two of the witness were hired by him.

12. The defendant paid the plaintiff through checks signed by the plaintiff his regular and agreed salary of $250.00 per month. In addition to the regular agreed employment, and during the period that the plaintiff made no claim upon the defendant based on employment other than office manager, the defendant paid the plaintiff a bonus of one-sixth of his annual salary in addition to his regular pay. The defendant would not have paid that sum except on the basis that the plaintiff was office manager. Also during the period of em-ployment the plaintiff was allowed a house for himself and his family to occupy without rent, and during at least a portion of his occupancy of that house he had electricity allowed to him. In addition he was given a regular vacation with full pay, and he had a few days allowed to him during his approximately one year of employment, and actually took two or three days in addition to the absent time requested. No deductions were made from his salary for these periods of absence.

13. Toward the end of his employment, in January, 1948, the plaintiff, seeking employment elsewhere, made written application in response to an ad inserted in a newspaper in which he stated that he had nearly ten years accounting experience, mostly supervisory, and was at that time comptroller of a small canning factory, where he was in full charge of all phases of accounting, tax reports, etc.

14. Plaintiff regularly had directly assisted the President of the company where such primarily required the exercise of discretion and independent judgment.

### Conclusions of Law.

1. Plaintiff was employed in an administrative capacity and therefore he is not under the Wage and Hour Act. Specifically, he was employed in an administrative capacity within the exemption of Sec. 13(a) of the Act and Regulations thereunder.

2. Plaintiff, having made no demand and having affirmatively represented and treated himself as a person in an administrative capacity who is not under the Act, and the company, having made allowances to him during the period of his employment which it was not obligated to do, and based on the fact that he was its office manager with full responsibility and discretion for the operation of the accounting end of the company's business, was estopped from claiming that he was an employee who was not employed in an administrative capacity.

3. In any event defendant's business is seasonal under Secs. 7(b) (3) and 7(c) of the Wage and Hour Act, and de-

fendant would be entitled to the seasonal exemption provided by these sections.

4. In any event plaintiff has not sustained the burden of proof to establish a case of liability against the defendant under the terms of the Wage and Hour Act.